ADMINISTRATORS OF BARTON v. RECTOR AND OTHERS.

1. The third section of the act concerning "Bonds and notes," (R. S. 1835, p. 105,) declaring that the nature of the defence of the obligor or maker, shall not be changed by assignment, but he may make the same defence against the bond or note, in the hands of the assignee, that he might have made against the assignor, was intended to embrace equitable as well as legal defences.

2. In chancery. B. purchased a lot of ground from R., paid part of the purchase money, and gave his notes for the residue ; and R. at the same time, covenanted to make a deed of general warranty as soon as the payments were completed. At the time of the sale the lot was incumbered, but this was known to B., who was not, however, placed in possession. Subsequently the lot was sold to satisfy the incumbrances. R. became utterly insolvent, and assigned the notes to others, who obtained judgment at law against B. on the notes. The prayer of the bill was for a rescision of the contract—a perpetual injunction of the judgments—a cancellation of the notes, and a return of the purchase money paid. The circuit court dissolved the injunction and dismissed the bill. The supreme court reversed the decree of the circuit court and decreed according to the prayer of the bill.

Appeal from the Circuit Court of Cooper county

TODD for Appellants.

ADAMS for Appellees.

*Opinion of the Court, delivered by Napton, Judge.* \*

AUG. TERM,
1842.

Administ'rs
of Barton
v.
Rector and
others.

This was a bill in chancery, brought by the administrators of David Barton, deceased, against Nimrod Rector, Charles Rector, Jamison Samuel & Co., John H. Gay & Co., and others.

The bill charges that Barton in his life time contracted in writing with the Rectors for a lot in the town of Boonville, by the terms of which agreement they were to convey to said Barton the said lot by "deed of general warranty in fee," so soon as Barton completed the payments of purchase money. The price of the lot was three thousand dollars, payable in three installments for each of which Barton gave separate notes bearing interest, &c.

The bill alleges that these notes were assigned to Samuel & Co., Gay & Co., and others, made parties defendants.

The bill further charges a payment of $672.10, by Barton, on one of the notes, and that judgment at law had been obtained on the others.

It is further charged, that the lot was incumbered by two deeds of trust, at the time of the sale ; that these incumbrances were never removed, and that the Rectors were insolvent or in very embarrassed circumstances at the time of the sale. It is also alleged, that these incumbrances were concealed from Barton.

The prayer of the bill is for a rescision of the contract, a perpetual injunction of the judgments at law, a cancellation of the notes unpaid, and a return of the $672.10, which Barton had paid in his life time.

The answers of the Rectors admit all the material allegations of the bill in relation to the terms of the contract, and the existence of the incumbrances ; but deny all fraud and concealment. Both the Rectors admit their inability to remove the incumbrances.

---

\*Judge Tompkins, being of kin to one of the parties, did not sit in the cause.

Administ'rs
of Barton
v.
Rector and
others.

The answers of the assignees of the notes, who are the remaining parties to the suit, deny all knowledge of the transaction and rely on being protected as bona fide purchasers without notice.

On the hearing of the cause, the complainants proved that under the deed of trust mentioned in the bill, a sale of the house and lot had been made to satisfy said liens ; that at the time of the sale to Barton, the said Rectors were in embarrassed circumstances, and that neither of them discharged the liens, and further proved the payment by Barton of the $672.10, charged in the bill.

The defendants proved, that at the time of the sale to Barton, he had actual notice of the incumbrances, and of their being on record, and also knowledge of the embarrassed condition of the Rectors, and was persuaded not to purchase, but that he avowed his confidence in their honesty and industry, and his belief that they would remove the incumbrances.

The injunction was dissolved, and the bill dismissed. From this decree an appeal is now taken to this court.

In examining this decree we will first examine whether the assignment of these notes by the Rectors has in anywise affected the legal or equitable rights of Barton. This inquiry is an important one, and in this case, necessarily a preliminary one, as a decision favorable to the assignees, on this point, would render unnecessary any further investigation of the rights of complainants against the assignee.

The statutes of other States in *pari materia*, and the adjudication of the courts upon such statutes, have been much relied upon at the bar, with a view to elucidate the meaning of our act of assembly concerning the assignment of bonds and notes. But our statute is so plain and explicit that human ingenuity would hardly torture its language into an ambiguity.

The third section declares that " the nature of the defence of the obligor or maker, shall not be changed by the assignment, but he may make the same defence against the bond or note, in the hands of the assignee, that he might have made against the assignor." The fifth section fur-

ther declares "that the assignee shall never obtain any greater title to, or interest in, any bond or note than the person had from whom he acquired it."

The defence spoken of in this third section, was clearly intended to embrace equitable as well as legal defences: for the court of appeals of Virginia, in Norton v. Rone, (2 Wash. R. 233,) so construed the act of the Virginia Assembly, which merely provided that the plaintiff should allow *all just discounts and offsets*, either against himself or his assignor before notice of assignment. A similar statute in Kentucky was similarly construed, and the act held to save all equitable defences, which the obligor had against the obligee, from being impaired or affected by the assignments. Rawlins v. Timberlake, 6 Monroe R. 234.

As to the distinction between equities existing at the time of the assignment and those arising afterwards, such distinction appears to be unfounded. The equity must of course exist at the time the note is made, and it is difficult, if not impossible, to conceive of any equity springing up after the completion of the contract. The equity, if any there be, is brought into existence simultaneously with the contract, though the circumstances which call it into action may arise after or before the assignment. The existence of these facts or circumstances has no bearing upon the assignment, and the equitable rights of the obligor are not affected by the assignment, though they may have been called into active operation by the happening of events subsequent thereto. The main question in the case will then be considered, as though the Rectors, who were the obligors in the notes, were the only parties defendants. The assignees stand in no better position than what the assignors themselves would occupy. Though they are bona fide purchasers without actual notice, the law of assignments operates to place them on their guard against any equitable defence which existed against their vendors.

The bill, answers, and exhibits, show the facts of this case to be simply these : Barton purchased of the Rectors a lot in Boonville for three thousand dollars, for

AUG. TERM, 1842.

Administr'rs of Barton v. Rector and others.

The third section of the act concerning "Bonds and notes," (R. S. 1835, p. 105.) declaring that the nature of the defence of the obligor or maker, shall not be changed by assignment, but he may make the same defence against the bond or note, in the hands of the assignee, that he might have made against the assignor, was intended to embrace equitable as well as legal defences.

In chancery. B. purchased a lot of ground from R., paid part of the

AUG. TERM, 1842.

Administ'rs of Barton
v.
Rector and others.

purchase money, and gave his notes for the residue: and R, at the same time, covenanted to make a deed of general warranty, as soon as the payments were completed. At the time of the sale the lot was incumbered, but this was known to B., who was not, however, placed in possession. Subsequently the lot was sold to satisfy the incumbrances. R. became utterly insolvent, and assigned the notes to others, who obtained judgments at law against B. on the notes. The prayer of the bill was for a rescision of the contract—a perpetual injunction of the judgments—a cancellation of the notes, and a return of the purchase money paid. The circuit court dissolved the injunction, and dis-

which he gave three several promissory notes. At the same time, the Rectors covenanted to make him a deed of general warranty in fee simple, so soon as the payments were completed. Barton paid a portion of the purchase money, and after his death his executors were sued upon the other notes, and judgment recovered. At the time of the sale, the lot was incumbered, but Barton knew of the incumbrance, and was aware of the embarrassed pecuniary condition of the Rectors; but anterior to the decree, the lot was sold and passed entirely out of the Rectors. Will a court of equity now throw the complainants upon their covenant, when it is apparent that no title can be made, and that no real satisfaction could be obtained by a suit at law.

I will, however, leave out of view, in this aspect of the case, the insolvency of the Rectors. Their entire inability to make a conveyance is conceded in their answers, and proved, if proof were necessary, by the testimony. They have covenanted to make a deed in fee simple, with general warranty, and such a covenant implies not merely their willingness to make a deed of this character, but their *ability* to make a deed which will carry an indefeasible title. Judson v. Wap, 11 John R. 524; Clute v. Robinson, 2 J. R. 614. Such a deed is, by their own admissions, clearly beyond their power.

A manifest distinction is to be traced through all the cases between executory contracts, and those which have been executed. In the latter class, where a deed has been made, and possession given, there must be an eviction at law under paramount title, before the court of chancery will interfere, and the vendor selling in good faith; is not responsible for his title beyond his covenants. Bumpass v. Pattner, 1 John C. R. 218; Governeur v. Elmendorf, 5 ib. 84; Abbot v. Allen, 5 ib. 523. Whether an outstanding incumbrance; shown by the record, be equivalent to an eviction, is not well settled; but the knowledge of such an incumbrance by the vendee at the time he accepted his deed, would seem to preclude him from asking the interposition of a *court of equity.*

But the case now before the court is the case of an executory contract; no deed has been made or accepted, and no possession given. There having been no possession, there could of course be no eviction. But the complainants equity rests upon the total failure of consideration, not a mere defective title, but an entire inability on the part of the vendor to make any title whatever.

In the case of Rawlins v. Timberlake, (6 Mo. R. 234,) where the contract was executed, a deed of general warranty made and accepted, and possession of the land taken by the vendee, the court refused to rescind the contract, merely because adversary claims were set up, of which the purchaser had notice at the time of the sale.—There had been no eviction, and that the court regarded as essential to warrant its interference. Yet even in that case, it appearing that a part of the land conveyed with warranty was lost, the court enjoined so much of the purchase money as was equivalent to the value of the land lost, upon the ground of the insolvency of the warrantor. The language of Judge Bibb, when treating of this branch of the case, is applicable here. "If," says he, "equity could interfere in such a case, by reason of the insolvency of the warrantor, to arrest the payment of the purchase money, or any part of it, it would only be by clear evidence of eviction or undoubted defect of title, so as to show the covenant of warranty broken, and by stopping payment of so much of the purchase money as was equal to the damages incurred by the breach." This was accordingly done, and the complainant, as to the loss established, was not thrown upon his covenants, but obtained the equitable interference of the court.

In this case, there is a total failure of consideration, and a court of equity would not turn the parties round to a suit at law, even were it obvious that such suit would be of any avail.

The admissions of the Rectors, their failure to remove the incumbrances, and the proofs taken in the cause, render it exceedingly probable that a suit upon their covenant would be fruitless. But admitting that it would not

AUG. TERM,
1842.

Administ'rs
of Barton
v.
Rector and
others.

missed the bill. The supreme court reversed the decree of the circuit court, and decreed according to the prayer of the bill.

AUG. TERM,
1842.

Administ'rs
of Barton
v.
Rector and
others.

be so, their entire inability to make any title is a sufficient ground for arresting the payment of the purchase money. And their assignees, as we have seen, stand in no better predicament than themselves.

It is therefore ordered, that the decree of the circuit court be reversed, and this court proceeding to make such decree as the circuit court should have made, do hereby order, adjudge, and decree, that the contract aforesaid be recinded, the judgments at law be perpetually enjoined, and that Nimrod and Charles Rector refund to the administrators of David Barton, deceased, the sum of $672.10 with interest.